**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ADAM M. WEISSMAN,<br><br>                               Plaintiff,<br><br>          v.<br><br>PHILIP C. GUTWORTH, P.A. and PHILIP C.<br>GUTWORTH,<br><br>                               Defendants. | **OPINION**<br><br>Civ. No. 2:14-cv-00666 (WHW) (CLW) |

**Walls, Senior District Judge**

In this class action arising from alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), the Court now considers whether to approve a final settlement. After conducting a fairness hearing on May 6, 2015, the Court now grants final certification of the settlement class and approves the settlement.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Adam Weissman filed a class action complaint against Defendants Philip Gutworth and his law firm, Philip Gutworth, P.A., on January 29, 2014. Compl., ECF No. 1. The complaint alleges that Defendants violated the FDCPA, 28 U.S.C. § 1692g(a)(4), by sending Plaintiff an insufficiently detailed debt collection letter. Compl. ¶¶ 9-19, ECF No. 1. Plaintiff asserts that the letter unlawfully failed to notify him that, should he dispute the status of his debt, he was required to do so in writing within thirty days. *Id.* ¶ 19. Plaintiff brought the action both individually and on behalf of all others similarly situated, alleging that it was Defendants' "policy and practice" to send such deficient letters. *Id.* ¶¶ 20, 28.

Plaintiff and Defendants reached a settlement agreement and the Court preliminarily approved it, as required by Federal Rule of Civil Procedure 23(e), on January 23, 2015. Opinion,

**NOT FOR PUBLICATION**

ECF No. 15. The settlement agreement defines the class to include "any Person to whom defendants sent a letter which was the initial written communication sent in an attempt to collect a debt" and included one of the following statements:

> (i)　　"Unless you notify us within 30 days after receipt of this letter that the validity of this debt, or any portion of it, is disputed, we will assume the debt is valid. If you do notify us of a dispute, we will obtain verification of the debt and mail it to you," or
>
> (ii)　　"We may proceed with suit against you without waiting the thirty days, if so required by our client."

Settlement Agreement 2, ECF No. 14. The class is limited to persons who received such letters between January 30, 2013 and March 5, 2014. *Id.* The settlement agreement provides that Plaintiff and all other class members who do not opt out of the agreement will "forever release and discharge" Defendants from liability related to the facts underlying this action. *Id.* ¶ 7.

In consideration of the release and discharge, Defendants will pay $7,900 into an escrow account. *Id.* ¶ 1.1. $3,500 of this amount will be paid to Mr. Weissman and $4,400 will be distributed pro rata to the other class members. *Id.* ¶ 1.2. The $3,500 amount to be paid to Mr. Weissman represents a $1,000 statutory recovery and a $2,500 incentive award. *Id.* The $4,400 amount is to be sent in $100 individual payments to the forty-four existing class members identified by Defendants. *Id.* Any funds remaining in escrow will be paid to Essex-Newark Legal Services. *Id.* The settlement agreement also provides that Defendants will pay $20,000 to the class counsel, Philip Stern, Esq., for costs and fees. *Id.* ¶ 2.

When the Court preliminarily approved the parties' settlement agreement, it also conditionally certified the class, approved the parties' proposed class notice, and scheduled the fairness hearing for May 6, 2015. Before the fairness hearing, Defendants sent the approved class notice forms to the forty-four class members by First Class Mail. Decl. of Jeffery S. Leonard ¶ 7,

**NOT FOR PUBLICATION**

ECF No. 18. Six of the mailed notice forms were returned to Defendants as undeliverable. *Id.* ¶¶ 8-9. No class member has opted out or objected to the proposed settlement. Pl.'s Br. ¶ 7, ECF No. 17.

**DISCUSSION**

Before granting approval of the settlement agreement, the Court must consider: (1) whether the class can be certified under Federal Rule Civil Procedure 23; (2) whether notice to the class was adequate; (3) whether the settlement is fair, reasonable and adequate; and (4) whether the provision for attorneys' fees and costs is reasonable.

**1. Final Class Certification Is Appropriate**

The Court earlier granted conditional class certification, and now "final settlement approval depends on the finding that the class met all the requisites of Rule 23." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.* ("*GM Truck Prods.*"), 55 F.3d 768, 797 (3d Cir. 1995). Under Rule 23(a), the Court must find that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Rule 23(b)(3), under which Plaintiff seeks class certification, additionally requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The Rule 23(a)(1) numerosity requirement provides that it must be impracticable to join all class members, but there is "no minimum number of members needed for a suit to proceed as a class action." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012). Rule 23(a)(1)

**NOT FOR PUBLICATION**

"requires examination of the specific facts of each case," but "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Id.* (citations omitted). Here, there are forty-four class members. Pl.'s Br. ¶ 3. The Court finds the numerosity requirement satisfied.

The Rule 23(a)(2) commonality requirement demands that "the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001) (citations omitted). To satisfy this requirement, class claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011). The commonality requirement is satisfied here because Plaintiff and all class members received debt collection letters from Defendants which included one of two specific statements. Questions of law regarding whether these statements violated the FDCPA are common to all.

The Rule 23(a)(3) typicality requirement mandates that the representative party's claims be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality inquiry is intended to assess . . . whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Baby Neal v. Casey*, 43 F.3d 48, 57-58 (3d Cir. 1994). "This investigation properly focuses on the similarity of the legal theory and legal claims; the similarity of the individual circumstances on which those theories and claims are based; and the extent to which the proposed representative may face significant unique or atypical defenses to her claims." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597-98 (3d Cir. 2009). Plaintiff's claims are identical to the class

**NOT FOR PUBLICATION**

claims. They are predicated on the same legal and factual circumstances: Defendants' alleged practice of mailing collection letters with legally deficient language. Plaintiff's claims are sufficiently typical.

Rule 23(a)(4)'s adequacy requirement demands that the Court determine whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court considers whether Plaintiff "has the ability and the incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." *Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir. 1988). Here, class counsel is well-qualified and no conflict separates Plaintiff's claims from the class' claims. Although Plaintiff will receive an incentive payment of $2,500, this accords with Plaintiff's effort on behalf of the class. The Court finds that Plaintiff is an adequate representative.

Rule 23(b)(3) includes two requirements: that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The rule's predominance requirement demands that "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem v. Windsor*, 521 U.S. 591, 624 (1997). "[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 298 (3d Cir. 2011). In this case, Plaintiff alleges that Defendants sent all class members a collection letter with specific statements that violated the FDCPA. Because every class member's claim proceeds from this factual nucleus, all claims uniformly turn on the question of whether

**NOT FOR PUBLICATION**

FDCPA liability flows from Defendants' letters. This question predominates over any questions related to individuals, and satisfies the Rule 23(b)(3) predominance requirement.

The Rule 23(b)(3) superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533-34 (3d Cir. 2004) (citations and quotations omitted). The Court examines "(1) the interest of individual members of the class in controlling the prosecution of the action, (2) the extent of litigation commenced elsewhere by class members, (3) the desirability of concentrating claims in a given forum, and (4) the management difficulties likely to be encountered in pursuing the class action." *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 149-50 (3d Cir. 2008). The class action mechanism is the superior method for bringing the present class members' claims. It offers prompt relief and averts the undue costs class members would incur in prosecuting their claims individually. There is no indication that any individual class member has filed a complaint against Defendants elsewhere. Given the limited size of the proposed class, no inherent management difficulties appear on the horizon. Rule 23(b)(3) is satisfied. Because the Court has found that the proposed class action satisfies the requirements of Rules 23(a) and (b), the Court grants final certification.

### 2. Class Notice Was Proper

For classes certified under 23(b)(3), members must be provided with "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Due process requires that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The notice must "clearly and concisely state

6

**NOT FOR PUBLICATION**

in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

The notice provided to the class members here met these requirements. It described the proposed settlement, its terms, and the nature of the claim filed on behalf of the class. Notice of Proposed Settlement, ECF No. 16. It also described the class members' right to be excluded from the settlement, to object, and to be heard at the final fairness hearing held on May 6, 2015. *Id.* It advised class members of the binding effect the settlement would have on individuals who did not opt out of the class. *Id.* Notice forms were mailed to forty-four individuals and six were returned as undeliverable, for an 86% success rate. The Court finds that the notice met the requirements of Fed. R. Civ. P. 23(c)(2)(B).

### 3. The Settlement Is Fair, Reasonable, and Adequate

#### a. Legal Standard

District courts must review settlement terms in a class action and, "if the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The court "acts as a fiduciary, guarding the claims and rights of the absent class members." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010). The Third Circuit Court of Appeals identified nine factors that bear on this analysis in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975):

(1) the complexity and duration of the ligation;

7

**NOT FOR PUBLICATION**

(2) the reaction of the class to the settlement;

(3) the stage of the proceedings;

(4) the risks of establishing liability;

(5) the risks of establishing damages;

(6) the risks of maintaining a class action;

(7) the ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement in light of the best recovery; and

(9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.* ("*GM Truck Prods.*"), 55 F.3d 768, 785-86 (3d Cir. 1995) (citing *Girsh*, 521 F.2d at 157).

In addition to the *Girsh* factors, the Third Circuit encourages district courts to consider additional factors, such as the probable outcome of a trial on the merits, the probable outcome of claims by other classes, and whether any provisions for attorneys' fees are reasonable. *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions* ("*Prudential*"), 148 F.3d 283, 323 (3d Cir. 1998). The "*Prudential* considerations are just that, prudential." *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013). Finally, the Third Circuit has recently guided that an important consideration is "the degree of direct benefit provided to the class," including "the size of the individual awards compared to claimants' estimated damages." *Id.*

Though a district court must vigorously protect the interests of absent class members, it also owes deference to a settlement as the negotiated agreement of private parties. As the Third Circuit explained, "[s]ettlements are private contracts reflecting negotiated compromises. The role of a district court is not to determine whether the settlement is the fairest possible resolution [but

8

**NOT FOR PUBLICATION**

only whether] the compromises reflected in the settlement . . . are fair, reasonable, and adequate when considered from the perspective of the class as a whole." *Id.* at 173-74 (citation omitted).

### b. Analysis

The Court finds that the *Girsh* factors and *Prudential* considerations weigh in favor of approving the settlement.

The first *Girsh* factor considers the complexity and likely duration of litigation without settlement. *GM Truck Prods.*, 55 F.3d at 785. Although the complaint does not present complex issues that would protract trial, settlement will allow class members to avoid undue expense and uncertainty of further litigation. The first factor favors approval. The second factor, considering the reaction of the class to the settlement, also favors settlement. That no class members have objected to or opted out of the proposed settlement suggests its acceptability. The third factor contemplates the stage of the proceedings and amount of discovery completed. *Id.* The parties are at an early stage in the litigation process, but have completed enough discovery to inform their settlement negotiations. Pl.'s Mem. ¶¶ 7-8.

The fourth and fifth factors, which consider the risks of establishing liability and damages, also support approval of the settlement. Settlement eliminates the risk that a jury might find, after trial, that Plaintiff did not establish liability or damages. The sixth factor, which evaluates the risk of maintaining the class action through trial, is neutral. Although class certification is always conditional and may be reconsidered, *Rendler v. Gambone Bros. Dev. Co.*, 182 F.R.D. 152, 160 (E.D. Pa. 1998), there is no apparent reason why the Court would decertify or modify the class here.

The seventh factor, which analyzes the defendants' ability to withstand a greater judgment, favors settlement. The FDCPA caps total damages for non-named plaintiffs in class actions at the

**NOT FOR PUBLICATION**

lesser of $500,000 or 1% of the defendants' net worth. 15 U.S.C. § 1692k(a)(2)(B). Because Defendants have represented that $4,400 is more than 1% of their net worth, Pl.'s Br. ¶ 4, the settlement here awards class members more than would be available to them after trial.

The eighth and ninth factors consider the reasonableness of the settlement in light of the best possible recovery and the attendant risks of litigation. As discussed above, the proposed settlement terms provide for a greater recovery than the non-named plaintiffs could receive after trial. Although the class members could obtain up to $1,000 in statutory damages by opting out of this proceeding and initiating their own FDCPA actions against Defendants, 15 U.S.C. § 1692k(a)(2)(A), this strategy would present legal costs and no class member has opted out. The settlement is reasonable in light of the best possible recovery and the risks inherent in litigation.

The relevant *Prudential* considerations also support settlement approval. Class counsel Philip Stern has sufficient experience to appreciate the merits of this case. The parties have conducted sufficient discovery. Class members had the opportunity to opt out of the class, and none did. As addressed later, the provision for attorneys' fees is reasonable. Mr. Weissman's $2,500 incentive is in line with awards to named plaintiffs in similar cases. *See, e.g., Varacello v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 258-29 (D.N.J. 2005) (incentive awards ranging from $1,000 to $10,000); *Orloff v. Syndicated Office Sys., Inc.*, No. 00-5355, 2004 WL 870691, at *7 (E.D. Pa. Apr. 22, 2004) ($5,000); *Bonett v. Educ. Debt Servs., Inc.*, No. 01-6528, 2003 WL 21658267, at *7 (E.D. Pa. May 9, 2003) ($4,000). The *cy pres* award to Essex-Newark Legal Services of any undeliverable funds is acceptable, as it will promote access to legal representation in Essex County with a small fraction of the settlement funds. *See Baby Products Litig.*, 708 F.3d at 172 (describing acceptability of *cy pres* awards in class action settlements).

NOT FOR PUBLICATION

The "degree of direct benefit provided to the class," including "the size of the individual awards compared to claimants' estimated damages," *Baby Products Litig.*, 708 F.3d at 174, also supports approval. As discussed earlier, the non-named class members' $100 awards exceed the maximum statutory damages that would be available to them after a trial victory. There is no evidence of actual damages to class members in this case.

After considering the relevant factors, the Court finds the proposed settlement fair, reasonable, and adequate.

### 4. Attorneys' Fees

The Court also finds that the proposed payment of $20,000 for attorneys' fees and costs is fair and reasonable. The Third Circuit has established two methods for evaluating the award of attorneys' fees: (1) the lodestar approach, and (2) the percentage of the recovery approach. *GM Truck Prods.*, 55 F.3d at 820-21; *see Prudential*, 148 F.3d at 333. The Third Circuit has emphasized that "[t]he percentage of recovery method is generally favored in common fund cases because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir.2005) (quoting *Prudential*, 148 F.3d at 333). Factors a district court should consider when evaluating attorneys' fees include the size of the fund created and the number of persons benefitted, objections by class members, counsel's skill and efficiency, the complexity and duration of the litigation, the risk of nonpayment, the amount of time counsel spent on the case and awards in similar cases. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n. 1 (3d Cir. 2000). District courts should "cross-check" a percentage-of-recovery award by looking at the lodestar amount. *In re Rite Aid*, 396 F.3d at 300.

**NOT FOR PUBLICATION**

Here, the common fund is $4,400 and class counsel will receive $20,000. Although Plaintiff's counsel will receive more than four times the common fund amount, this circumstance occurs in FDCPA class action settlements of this scale. *See, e.g., O'Connor v. AR Res., Inc.*, No. 08-1703, 2012 WL 12743, at *9 (D. Conn. Jan. 4, 2012) (finding attorneys' fees of $32,000 reasonable and appropriate where common fund was $5,000); *Harlan v. Transworld Sys., Inc.*, No. 13-5882, 2015 WL 505400, at *11 (E.D. Pa. Feb. 6, 2015) (finding attorneys' fees and costs of $44,450 reasonable where common fund was $22,900). The lodestar method also suggests that $20,000 is reasonable. Mr. Stern's declaration indicates that he has spent 37.2 hours on this matter and bills at a rate of $575 per hour, yielding total fees of $21,390. Pl.'s Br. ¶ 27. The lodestar amount is a "presumptively reasonable fee." *See Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 310 (3d Cir. 2008). The Court finds that a $20,000 payment for attorneys' fees and costs is reasonable.

## CONCLUSION

The Court grants final certification to the plaintiff class and grants final approval of the settlement agreement. An appropriate order follows.

Date: May 26, 2015

/s/ William H. Walls
United States Senior District Judge